Argued October 27, affirmed December 1, 1976, petition for
reconsideration denied January 19, petition for
review denied February 1, 1977

# NORRIS, *Appellant,*
## *v.*
# STATE ACCIDENT INSURANCE FUND,
## *Respondent.*
## (No. 36-530, CA 6691)
### 557 P2d 61

*Raymond Conboy,* Portland, argued for cause for appellant. On the brief were D. Richard Hammersley and Pozzi, Wilson & Atchison, Portland.

*Kevin L. Mannix,* Assistant Attorney General, Salem, argued the cause for respondent. With him on the brief were Lee Johnson, Attorney General, and W. Michael Gillette, Solicitor General, Salem.

Before Schwab, Chief Judge, and Fort and Lee, Judges.

LEE, J.

**LEE, J.**

In this workmen's compensation coronary case the referee upheld denial of compensation; the Board reversed the referee; the circuit court reinstated the referee's decision. Claimant appeals.

Claimant, a 42-year-old fireman, was employed as a fire-truck driver. He began his 24-hour shift on January 25, 1975 at 7 a.m. At 12:48 p.m. that day the fire department received a false alarm; claimant drove the fire truck. Upon return to the station, claimant found that he did not feel good and was experiencing aching in his legs, arms and chest. The pain persisted for an hour and claimant lay down. Later that day the pain subsided and claimant completed his shift at 7 a.m. on the 26th. By that time he was not experiencing any symptoms.

Claimant was in the process of moving a three-piece sectional davenport at about 9 a.m. on the 26th when he experienced chest pains. He was taken to the hospital where he was admitted at 1:00 p.m. His condition was diagnosed as a myocardial infarction. He remained in the hospital for two weeks.

Prior to the January 25 work incident, claimant had experienced some pains but none similar to those suffered during his return from the false alarm. Claimant had received periodical physical examinations, including EKGs, which were normal. Claimant was slightly overweight and had smoked a pack a day of cigarettes since he was 18.

Claimant's treating physician, Dr. Tarro, who had performed four prior physical examinations of claimant, reported by letter dated August 5, 1975 to claimant's counsel that:

"\* \* \* \* \*

"In view of the fact that the patient was on-the-job when this coronary insufficiency syndrome occurred, one has to consider his job as a materially contributing factor."

SAIF's investigator, however, had previously contacted Dr. Tarro and made the following notation:

"\* \* \* \* \*

"\* \* \* Contacted Dr. Tarro 4/4/75. He states he can not tell what precipitated the myocardial infarction. He does not know if occupation contributed to the heart condition or not. \* \* \* There is no way, in his opinion, that he could determine if the occupation contributed to the myocardial infarction or not. \* \* \*' "

At the hearing before the referee on August 13, 1975, Dr. Tarro testified:

"\* \* \* My conclusion was that what I considered to be a pre-infarction problem or coronary insufficiency occurred while he was on the job. My medical mind, I merely associated the two. I don't think I can reach out and say it's because of the fireman because I don't know that much about his job, what he does on the job or how he responds to his job. I don't know this.

"Q You may have already answered this question, Doctor, but based upon reasonable medical probability, if Mr. Norris had never become a fireman, how long delayed in his life span would his first symptom of coronary artery disease have been delayed?

"A I can't answer that.

"Q You can't say it would have been delayed one second, can you?

"A No, sir."

Respondent produced reports of three physicians; none of whom had examined claimant. Two of the doctors (one of whom was the head of the Division of Cardiology of University of Oregon Health Sciences Department of Medicine) reviewed claimant's relevant medical records and concluded that the evidence did not show a work-related medical problem but did strongly suggest that the infarction was precipitated by moving the furniture. It appears, though the evidence does not positively show, that the third doctor also reviewed claimant's medical records; he concluded that there was no relationship between claimant's heart attack and his employment.

The only witnesses who appeared before the referee were claimant and his personal physician, Dr. Tarro.

Claimant's first assignment of error is that the trial court incorrectly concluded that the evidence rebutted the presumption of ORS 656.802 which provides:

"(1) As used in ORS 656.802 to 656.824, 'occupational disease' means:

"* * * * *

"(b) Death, disability or impairment of health of firemen of any political division who have completed five or more years of employment as firemen, caused by any disease of the lungs or respiratory tract, hypertension or *cardiovascular-renal disease,* and resulting from their employment as firemen.

"(2) Any condition or impairment of health arising under paragraph (b) of subsection (1) of this section shall be *disputably presumed* to result from a fireman's employment; provided, however, that any such fireman must have taken a physical examination upon becoming a fireman, or subsequently thereto, which failed to reveal any evidence of such condition or impairment of health which preexisted his employment." (Emphasis supplied.)

We construed this statute in *Pflughaupt v. SAIF,* 26 Or App 77, 552 P2d 284, Sup Ct *review denied* (1976). We observed that "disputable presumptions" are defined in ORS 41.360[1] and stated that:

"* * * If there is some opposing evidence, the trier of fact may consider all evidence on both sides and come to its own conclusion. If the evidence is in equipoise, the trier of fact must find for the defendant because the plaintiff had not met his burden of proof." 26 Or App at 80.

■ A claimant, then, is only aided by the ORS 656.802(2) presumption when there is no significant evidence to dispute his claim. Once there is such

---

[1] "All presumptions other than conclusive presumptions are satisfactory, unless overcome. They are disputable presumptions, and may be controverted by other evidence, direct or indirect, but unless so overcome, the jury is bound to find according to the presumption. * * *

"* * * * *." ORS 41.360.

evidence, the usual rule applies that a claimant must establish his claim by a preponderance of the evidence. *Hamilton v. Continental Pacific,* 24 Or App 871, 547 P2d 162 (1976).

Our de novo review of the record[2] confirms the trial court (and the referee) that claimant has not established, by a preponderance of the evidence, that he has a compensable claim. While the respondent's doctors did not personally examine claimant (and we thus accord their reports somewhat less weight), still all three of respondent's doctors were definite that claimant's condition was not caused by his employment. Claimant's only medical evidence came from his own physician whose testimony, as the referee found (and the trial court agreed) was equivocal and seemingly inconsistent with a previous statement.

We also note that (1) claimant was a long-term smoker and (2) the disabling onset of his condition occurred while he was moving furniture off the job. While these facts are not conclusive, they are persuasive that claimant's employment was not the cause of his condition.

Claimant's second assignment of error is that the trial court erroneously concluded that weight should be given to the referee's finding because he "saw the witnesses testify and is in a much better position to weigh the evidence than this Court" whereas respondent's evidence consisted of three written medical reports. While it would not be appropriate for the circuit court to give weight to the referee's evaluation of those written medical reports, it was proper to give weight to the referee's conclusions where, as here, he saw and heard claimant and his physician. *Lisoski v. The Embers,* 2 Or App 60, 66, 465 P2d 888 (1970).

Affirmed.

---

[2] *Stevens v. SAIF,* 20 Or App 412, 416, 531 P2d 921 (1975).